UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

-------------------------------------------------------------------X

TRACEY A. KING,

               Plaintiff,

      -against-

NORTH AMITYVILLE FIRE COMPANY, INC.,

           Defendant.

-------------------------------------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**
19-CV-04643 (JMA) (AYS)

**FILED
CLERK**

10:55 am, Jul 27, 2023

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**APPEARANCES:**

Tracey A. King
     <u>Pro Se</u> *Plaintiff*

Scott Gurtman, Esq.
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
341 Conklin Street, Second Floor
Farmingdale, New York 11735
     *Attorney for Defendant*

**AZRACK, United States District Judge:**

    <u>Pro se</u> plaintiff Tracey A. King ("Plaintiff") commenced this action on August 12, 2019 against North Amityville Fire Company, Inc. ("Defendant" or "Fire Company") alleging gender discrimination, hostile work environment and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et seq.</u>, Section 1983 of the Civil Rights Act of 1866 ("Section 1983"), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 <u>et seq.</u>  Plaintiff also claims that Defendant violated her Fourteenth Amendment right to procedural due process.  Plaintiff seeks damages and injunctive relief.

    Currently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons discussed below, the Court grants the

1

Defendant's motion for summary judgment.  Accordingly, Plaintiff's Amended Complaint is dismissed in its entirety.

## I.  BACKGROUND

### A.  Factual Background[1]

The facts in this case are undisputed, unless otherwise noted.

Plaintiff became a member of the Fire Company as a volunteer firefighter and EMS worker on March 1, 2001.[2]  (Pl. Opp'n. at 2; Gurtman Aff., Plaintiff's Membership letter, March 1, 2001, ("Def. Ex. C"), ECF No. 38-5; New York State Division of Human Rights ("NYSDHR") letter, August 9, 2018, ("Def. Ex. P"), ECF No. 38-18.)  According to Plaintiff, when she first started volunteering for the Fire Company, on many occasions, one member, Jimmy McGruder ("McGruder") told Plaintiff that "his penis doesn't get hard due to his prostate."  (Pl. Opp'n. at 4; AC at 6.)  She also alleged that McGruder told members that she was gay and not into men.  (AC at 6.)  She claims that people informed her that it was a joke but it was hurtful to hear.  (Id.) Plaintiff claims that "at a company dinner [she] was taken advantage of by a so call-friend [and] the cops w[ere] involved."  (Id.)  Plaintiff does not state whether this "friend" was a member of the Fire Company.  She claims that "the situation came up on the company floor at a meeting held by [ ] board member Sydney Gellineau ("Gellineau"), that the situation hurt [her] and no help was given or offered to [her]."  (Id.)  On March 24, 2007, Plaintiff had a physical and verbal altercation with Assistant Chief Timothy Lay, her then live-in boyfriend.  (Def. 56.1 ¶ 2; Plaintiff's suspension

---

[1] The facts set forth in this section are taken from: the Amended Complaint ("AC"), ECF No. 19; the Amended Answer, ECF No. 37; the Defendant's Local Rule 56.1 Statement ("Def. 56.1 Stmt."), ECF No. 38-1; the affirmation and exhibits submitted in support of the instant motion (Affirmation of Scott Gurtman ("Gurtman Aff."), ECF 38-2-38-18; and the supplemental papers filed by both parties in response to the Court's December 15, 2022 Order, ECF Nos. 56, 57.)

[2] For ease of reference, the Court refers to the electronic document filing system ("ECF") pagination.

letter, March 29, 2007, ("Def. Ex. D"), ECF No. 38-6.)  As a result, Plaintiff was suspended, for 120 days, effective March 29, 2007.  (Id.)

In December 2008, the Fire Company required that all members with less than twenty-five years of service had to respond to at least twenty-five percent of the calls received by the Fire Company.  (Pl. Opp'n. at 2, 4.)   According to Plaintiff, many members had been dropped from the rolls when they failed to meet this percentage requirement but were later put back on the roster.  (Id. at 4.)  On December 6, 2008, Plaintiff was dropped from the rolls of the Fire Company for failing to meet the percentage requirement.  (Suspension letter, December 6, 2008, ("Def. Ex. E"), ECF No. 38-7.)  Plaintiff petitioned the Board of Governors ("Board") for reinstatement explaining that she had "a very trying year [ ] due to some stressful measures"  (Id.; Letter to Plaintiff from the Board dated December 8, 2008, ("Def. Ex. F"), ECF No. 38-8.)  Plaintiff was reinstated, but on December 30, 2010, Plaintiff was dropped from the rolls again for failing to meet the percentage requirement.  (Suspension letter, December 30, 2010, ("Def. Ex. G"), ECF No. 38-9.)  At some point, Plaintiff was reinstated again.

On September 9, 2013, Plaintiff submitted a written complaint to the Board complaining that Assistant Chief John Harley ("Harley") had been subjecting her to sexual harassment and that she did not "feel comfortable [ ] answering calls due to the way John Harley conduct[ed] himself as an officer."  (AC at 39.)  Plaintiff claims that "John [Harley] had a problem with [her] for a long time," and that "[w]hen John came in the chief office he made [her] life a living hell."  (AC at 7.)  She alleges that Harley made a statement that if he was having sex with Plaintiff, he would have gotten her pregnant.  (Id.)  The Fire Company investigated Plaintiff's allegations of sexual harassment and discussed them separately with Plaintiff and Harley.  (Def. 56.1 ¶ 7; Notes from investigation of Plaintiff's internal complaint, September 19, 2013, ("Def. Ex. I"), ECF No. 38-

11.)  Harley denied the allegations and Plaintiff was informed that in the future she would need a witness to verify her claim.  (Id.)

Plaintiff alleges that after Harley became Chief, he contacted a man she was dating and told him lies about her.  (AC at 7.)  She claims that she informed the Board during a meeting, but nothing was done.  (Id.)

According to a letter dated April 9, 2015, Plaintiff was dropped from the rolls "as a member on probation" for failure to provide the Fire Company with adequate medical records during her extended medical leave.[3]  (Def. 56.1 ¶ 10; AC at 28; Suspension letter, April 9, 2015, ("Defs. Ex. K"), ECF No. 38-13.)  The Fire Company informed Plaintiff that her expulsion was approved by a majority vote of Company members, and that because she was on probationary status, she had "no right to petition the Board of Governors for a hearing and that [her] dismissal was final."  (AC at 28; Def. Ex. K.)

In a handwritten letter, dated April 12, 2015, Plaintiff requested a meeting with the Board. (AC at 31.)  Following a decision by Chief Harley, which was approved by the Board on April 27, 2015, Plaintiff was granted an extended medical leave "due to inadequacies of proper record keeping and follow up during her past medical leave."  (Letter granting Plaintiff medical leave extension, May 1, 2015, ("Def. Ex. L"), ECF No. 38-14.)  Accordingly, Plaintiff was permitted to continue on medical leave with the stipulation that every 3 months she submit a properly signed and dated note from her physician.  (Id.)  Plaintiff did not return to active status after 2015.  (Def. 56.1 ¶ 14.)  While on sick leave, firefighters do not receive any compensation and do not accumulate any credits toward their pension.  (Pl. Suppl. Mot. at 7; Pl. Opp'n. at 3; Def. Mot. at 5.)

---

[3] Plaintiff disputes this fact, claiming that "[t]here is no such thing as a member being on probation."  (Pl. Supp. Opp'n. at 2.)  She claims that "[she] was a member on sick, [and that she] submitted [her] documentation as needed."  (Id.)

The Fire Company is governed in part by a set of bylaws approved by the Board.  On June 29, 2015, the Defendant's bylaws were amended and now required that all members on medical leave submit a medical note every 90 days while on sick leave or risk expulsion from the Fire Company.  (AC at 40.)  Specifically, the amended section provides as follows:

> Medical leave may be provided to a full[-]time member who submits an authorized signed and dated doctor's note with date of leave and duration (approximate) of leave so listed.  If medical leave is to continue for period of more than 90 days a new dated and signed note must be turned in and for every 90 days thereafter. Failure to do so may result in expulsion from the fire company by a majority vote of members at a company meeting.  A member may be reinstated to active duty only upon a satisfactory O.S.H.A. physical examination in writing from the fire company physician.  Members on medical leave may attend meetings and social functions by discretion of the Chief, but are not to answer any alarms.  They will not be credited with any service award points or percentage points while on medical leave.  Members on medical leave and in good standing may vote.

(AC at 40; Article 2, Section 22 bylaw, adopted June 29, 2015, ("Def. Ex. M"), ECF No. 38-15.)

On August 29, 2017, Plaintiff was dropped from the rolls for the final time for failing to provide proper medical documentation while on extended sick leave in violation of Fire Company bylaw Article 2, Section 22.[4]  (Def. 56.1 ¶ at 14; Final expulsion letter, August 29, 2017, ("Def. Ex. N"), ECF No. 38-16.)  Plaintiff received her final expulsion letter on September 1, 2017, which states that Plaintiff's expulsion was approved by a majority vote during a company meeting on August 28, 2017.  (AC at 4.)  Plaintiff claims that the Board was aware that her neck was broken and that she had "major surgery" on April 25, 2017, and as a result was hospitalized for some time. (AC at 4; Pl. Opp'n. at 1.)

Plaintiff claims that she provided an individual named "A. Nelson" with a medical note after she was discharged from the hospital.  (Pl. Opp'n. at 5; AC at 4.)   According to Plaintiff,

---

[4] According to Defendant, this was Plaintiff's fifth and final suspension.  (Def. 56.1 ¶ 14.)  Plaintiff disputes the number of times she was suspended and states that "she was not dropped from the rolls numerous times."  (Pl. Supp. Opp'n. at 2.)

"[t]he Board kept certain people on the rolls that was on sick leave for years," without medical documentation.   (Pl. Opp'n. at 2; AC at 22 ("Darryl been on sick leave for years, never been a problem.").)

After receiving her final drop letter on September 1, 2017, Plaintiff submitted a hand-written letter to Defendant dated September 2, 2017 stating that "Paula Adams was the last person I gave my [doctor's] note to." (AC at 33.)  She received no response.  (AC at 18; Pl. Opp'n. at 5.)  Plaintiff sent text messages and certified letters to members of the Board claiming that she was dropped from the Fire Company unfairly and seeking to petition the Board.  (AC at 4.)   There is a dispute as to whether or not Plaintiff sent threatening texts to Board members.  (Pl. Opp'n. at 5; Def. Mot. at 8.)  Plaintiff claims the Board ignored her request for a meeting and "wanted [her] to go away."  (Pl. Opp'n. at 3.)

Plaintiff's Amended Complaint includes two medical related notes: one is a handwritten note dated February 21, 2014 signed by Plaintiff stating that she "was seen by [her] Dr. due to [ ] having heart problem [and] was told to take a leave of absence until further testing," and the second is a doctor's note dated August 8, 2019 stating that "[i]n 2017, Tracey King was excused from fire duties until further notice."  (AC at 9, 38.)

In a string of texts between Plaintiff and Gellineau on November 14, 2017, Plaintiff questioned the Board's authority to terminate her from the rolls.  (AC at 19-25.)  Gellineau informed Plaintiff that she was not the only member dropped from the rolls in accordance with the bylaw and that she should reapply once she can come off of sick leave.  (AC at 19-20; Pl. Opp'n. at 5.)  Plaintiff responded that the bylaw was amended just for her when Harley became Chief because she had reported that "John tried to sleep with [her]."  (AC at 22.)  Gellineau replied that

he would get Plaintiff in front of the whole Board but warned her that they "are taking a strong stance on everyone who has been on sick leave for a long time."  (AC at 23.)

One of Plaintiff's text messages complains about the way she was treated and states that, before her termination, she complained about Aaron Collins ("Collins") "taking money for a business, plus other things [I know]" and stresses that "Now he's CHIEF and I get a letter of dismissal."  (AC at 22.)  Plaintiff alleges that Collins was "gunning for [her]" and "dropped [her] from the company."  (AC at 7; see also Def Ex. O (Plaintiff's NYSDHR charge alleging that she "reported them for stealing money to [Suffolk County D.A.] and they were fully aware of this").)  Plaintiff claims that she was "a victim of a witch hunt." (AC at 8.)

On February 16, 2018, Plaintiff sent a text to Gellineau, Jeff Dixon and Chairman of the Board, McGrudder, requesting a letter stating the reasons she was expelled and unable to meet with the Board.  (AC at 25; Pl. Opp'n. at 5.)  On March 16, 2018, Plaintiff sent another text requesting a meeting before the Board and noting that she had not received any response to her certified letters to all Board members requesting the same.  (AC at 27.)

## B. **Procedural History**

On July 9, 2018, Plaintiff filed a charge with the NYSDHR alleging sex-based discrimination and retaliation claims against Defendant and two individual members of the Fire Company.  (AC at 4; Def. 56.1 ¶¶ 20, 21; Def. Ex. P.)  Plaintiff's complaint was sent to the United States Equal Employment Opportunity Commission ("EEOC") for dual filing purposes.  According to the complaint, the date of the most recent or continuing discrimination alleged was March 16, 2018.  (Def. Ex. P.)

On March 28, 2019, the NYSDHR issued a determination and order finding that there was no probable cause to support the Plaintiff's complaint.  (NYSDHR Determination and Order,

March 28, 2019, ("Def. Ex. Q") at 2, ECF No. 38-19.)  Specifically, the Division found that "many of Complainant's allegations are time-barred, having occurred more than one-year before the [July 9, 2018] filing of the complaint and [that] any timely allegations of harm do not reveal a nexus to complainant's gender and/or retaliation."  (Id.)  The EEOC issued a right to sue letter which Plaintiff received on May 20, 2019.  (AC at 5.)

On August 12, 2019, Plaintiff, proceeding pro se, initiated the instant action asserting claims against the Fire Company.  (Compl., ECF No. 1.)  On February 3, 2020, Plaintiff filed an Amended Complaint seeking reinstatement in the Fire Company, all of her benefits up to date, including her pension, and $15,000 in damages.  (ECF No. 19.)  Defendant filed the instant motion for summary judgment on September 15, 2021.  (ECF No. 38.)  Though the motion was unopposed, on November 24, 2021, Defendant filed a reply.  (ECF No. 41.)  The Court granted the pro se Plaintiff an extension of time to file an opposition, and on April 1, 2022, Plaintiff filed her opposition to Defendant's motion for summary judgment.  (ECF No. 48.)  On June 16, 2022, Defendant filed a second reply in further support of its motion for summary judgment.

By Order dated December 15, 2022, the Court noted that Defendant's motion for summary judgment failed to address Plaintiff's claims pursuant to Section 1983, and, accordingly, the Court gave the parties additional time to file supplemental briefs with respect to Plaintiff's procedural due process claim and the issue of Monell liability.  In accordance with the Court's Order, Defendant filed a supplemental motion for summary judgment on March 9, 2023, and Plaintiff filed an undated letter on March 7, 2023.

## II. DISCUSSION

### A.  Standard of Review

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting FED. R. CIV. P. 56(a)).  In deciding a motion for summary judgment, "the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted); see also Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (the court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments" (internal quotation marks and citation omitted)).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).  If the moving party satisfies its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."  Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006).  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a motion for summary judgment should be denied if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party").  All facts under consideration must be directly supported by admissible evidence.  See FED. R. CIV. P. 56(c).

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts" but rather "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original) (internal quotation marks omitted); see also Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (noting that "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact" (internal quotation marks and citation omitted)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 252) (alterations in original).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Moreover, "[w]here the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (holding that summary judgment is appropriate when the non-moving party has failed to make a sufficient showing on an essential element for which it bears the burden of proof).

With regard to summary judgment in employment discrimination cases specifically, the Second Circuit has said that:

> an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions . . . Nonetheless, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact.

Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted), abrogated on other grounds by Gross v. FBL Fin. Servs., 557 U.S. 167 (2009).  Despite this caution, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001); see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment").

Additionally, "[a] pro se party's submissions are to be read liberally, a requirement that is especially strong in the summary judgment context, where a pro se plaintiff's claims are subject to a final dismissal."  Ferguson v. Bizzario, No. 09-CV-8106, 2010 WL 4227298, at *3 (S.D.N.Y. Oct. 19, 2010).  Nevertheless, "[p]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment."  Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (plaintiff "may not rely on conclusory allegations or unsubstantiated speculation"); Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 147 n.2 (2d Cir. 1984) ("[A] mere allegation in [a] pleading [is] insufficient to defeat a summary judgment motion.") (internal quotation marks omitted).

### B.    Plaintiff's Claims

Plaintiff asserts sex-based discrimination and retaliation claims under Title VII and in violation of the Equal Protection Clause pursuant to Section 1983, as well as under state law. Specifically, Plaintiff alleges that she was subject to a hostile work environment at the Fire Company and faced retaliation for complaining about sexual harassment and discrimination. Additionally, Plaintiff asserts a procedural due process claim under the Fourteenth Amendment.

Defendant contends that it is entitled to summary judgment because Plaintiff's claims are time-barred and that, in any event, she fails to establish that she was subjected to sex-based discrimination or retaliation for complaining about alleged sexual harassment. Defendant further argues that Plaintiff, as a probationary employee, did not have a property interest in her employment at the Fire Company and therefore was not entitled to a pre-termination hearing. Finally, Defendant contends that, even if Plaintiff had a property interest in her employment as a volunteer firefighter, she was not denied due process as she had adequate Article 78 remedies.

For the reasons discussed below, the Court grants Defendant summary judgment.

### 1.    Timeliness of Title VII Claims

In New York, to pursue a claim under Title VII, a plaintiff typically has 300-days after the alleged discriminatory act to file a charge with either the Equal Employment Opportunity Commission ("EEOC") or the NYSDHR.  See 42 U.S.C. § 2000e–5(e); Harris v. City of N.Y., 186 F.3d 243, 248 n. 2 (2d Cir. 1999).  Similarly, under the NYSHRL, "[a]ny complaint . . . must be so filed within one year after the alleged unlawful discriminatory practice."  Id. (quoting N.Y. Exec. Law § 297(5)).[5]  "The statutory filing period operates as a statute of limitations; therefore,

---

[5] Further, in order to pursue a Title VII claim in federal court, a plaintiff must file his federal complaint within 90 days of receipt of his right to sue notice from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1); Dawes v. City University of New York, 193 F. App'x. 59, 60 (2d Cir. 2006) (citing Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994).  The Court

the failure to file an administrative complaint within the required time period will bar a plaintiff's action."  Jiles v. Rochester Genesee Reg'l Transp. Auth., 217 F. Supp. 3d 688, 691 (W.D.N.Y. 2016) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)); Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325 (2d Cir. 1999) ("[D]iscriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court."). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" and "each discriminatory act starts a new clock for filing charges alleging that act."  National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 114 (2002).

Hostile work environment claims fall under the "continuing violation" exception to the timeliness requirement.  Under this exception, "when a plaintiff experiences a 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'"  Dimitracopoulos v. City of N.Y., 26 F. Supp. 3d 200, 211 (E.D.N.Y. 2014) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)).  For the exception to apply, a plaintiff must challenge at least one act related to the allegedly discriminatory policy within the 300-day limitations period.  Predun v. Shoreham-Wading River Sch. Dist., 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007) (citing Bonner v. Guccione, 178 F.3d 581, 584 (2d Cir. 1999) (finding that conduct outside the 300-day time period is actionable "only if [the plaintiff] could demonstrate that she was subject to a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period").)

---

notes that Plaintiff's filing of the Complaint on August 12, 2019, was within 90 days of her receipt of the right to sue letter on May 20, 2019, and Defendant does not argue otherwise.

In the instant case, Plaintiff filed a discrimination charge with the NYSDHR, which was deemed dual-filed with the EEOC, on July 9, 2018.  As such, all Title VII claims that are based on incidents that occurred prior to September 12, 2017—300-days prior to the filing of her NYSDRH charge—are time-barred.  This includes Plaintiff's allegations of sexual harassment which all occurred prior to her September 2013 internal complaint, the June 2015 passage of Defendant's amended bylaw, and Plaintiff's August 29, 2017 termination from the Fire Company.  In fact, as noted in the NYSDHR decision, Plaintiff was on extended medical leave at the time of her termination and had not even been working at the Fire Company within one year of filing her administrative complaint.  (Def. Ex. Q); see Smith v. UAW–GM Legal Servs. Plan, 48 F. App'x 338, 340 (2d Cir. 2002) (affirming dismissal of hostile work environment claim as time-barred where plaintiff "was on leave during the 300–day period before she filed her claim with the New York Division of Human Rights").  Thus, even under a hostile work environment theory, Plaintiff's Title VII claims fail as she has not alleged any specific hostile act occurring in the 300-days prior to the filing of her July 9, 2018 EEOC charge.  (See Pl. Opp'n. at 4 ("everything was well outside the so call statu[t]e of limitations because they fail to do anything.").)  Therefore, as it is undisputed that no instances of workplace harassment, discrimination, or retaliation occurred within the limitations period, Plaintiff's Title VII claims are time-barred.

Accordingly, summary judgment is granted as to Plaintiff's Title VII claims.

2.      Section 1983 Standard[6]

In order to state a valid claim under Section 1983, a plaintiff must show that the conduct in question deprived her of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law.  42 U.S.C. § 1983; Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004).  It is well-settled that Section 1983 itself "creates no substantive rights" but rather "provides only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)).  "A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action, so long as the § 1983 claim is based on a distinct violation of a constitutional right." Gierlinger v. N .Y. State Police, 15 F.3d 32, 34 (2d Cir. 1994).

The limitations period for claims under Section 1983 is governed by state law, which, in New York, must be filed within three years of the adverse action.  Harris, 186 F.3d at 247-48.  The date of accrual for a Section 1983 claim is determined by federal law, Wallace v. Kato, 549 U.S. 384, 388 (2007), which provides that a Section 1983 claim generally accrues "when the plaintiff knows or has reason to know of the harm" she has suffered.  Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994)).  "[T]he pursuit of Title VII administrative remedies does not toll the statute of limitations on other Civil Rights Act claims," including those brought pursuant to Section 1983.  Szarejko v. Great Neck Sch. Dist., 795

---

[6] To the extent Plaintiff intended to raise claims pursuant to 42 U.S.C. § 1981 ("Section 1981"), (see AC at 2), those claims fail as a matter of law as Section 1981 does not provide a separate private right of action against state actors. See Duplan v. City of New York, 888 F.3d 612, 619-21 (2d Cir. 2018); see also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units[.]").

F. Supp. 81, 83 (E.D.N.Y. 1992) (citing Weise v. Syracuse Univ., 522 F.2d 397, 408 n. 15 (2d Cir. 1975)).

Here, Plaintiff commenced the instant action on August 12, 2019, therefore, she must establish a constitutional deprivation occurring three years prior to that date—after August 12, 2016.  Based on Plaintiff's allegations, the only conduct for which a timely Section 1983 claim may arise are Plaintiff's August 2017 expulsion from the Fire Company and her subsequent ignored requests to petition the Board.

3.   Gender Discrimination Claims Under Section 1983 and the NYSHRL[7]

Discrimination claims under Section 1983, Title VII and the NYSHRL are analyzed using the burden-shifting framework adopted in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 74-75 (2d Cir. 2016); Kearney v. Cty. of Rockland ex rel. Vanderhoef, 185 F. App'x 68, 70 (2d Cir. 2006).  Under the McDonnell Douglas framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination.  411 U.S. at 802-05.  To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) that she belonged to a protected class; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) that the adverse

---

[7] Claims brought pursuant to the NYSHRL are generally governed by a three-year statute of limitations.  Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 208 (E.D.N.Y. 2014) (citing N.Y.C.P.L.R. § 214(2)).  However, the limitations period is tolled during the pendency of a complaint before an administrative body. Id.; see also DeNigris v. N.Y.C. Health & Hosps. Corp., 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) ("Claims brought under the NYSHRL . . . are subject to a three-year statute of limitations, which is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter.").

Here, Plaintiff's EEOC charge was pending from July 9, 2018 (the date she filed her EEOC charge) through May 20, 2019 (the date the EEOC issued Plaintiff a right-to-sue letter).  As such, Plaintiff's NYSHRL claims are tolled during that time period — a total of 315 days.  Therefore, although Plaintiff filed her initial Complaint in this Court on August 12, 2019, and her NYSHRL claims would have otherwise accrued no earlier than August 12, 2016, Plaintiff gets the benefit of the time which elapsed during the period without which her administrative charge was pending before the EEOC.  As such, the Court may consider claims arising under the NYSHRL which occurred after October 2, 2015.  However, the only timely allegations in the Amended Complaint involve Plaintiff's 2017 termination from the Fire Company.

employment action occurred under circumstances giving rise to an inference of discrimination. Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275, 291 (E.D.N.Y. Mar. 23, 2005) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).   Upon demonstration of the plaintiff's prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decisions.   McDonnell Douglas, 411 U.S. at 802-05.   "[T]he employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle.   It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory."   Brierly, 359 F. Supp. 2d at 291.   "If the employer is able to satisfy that burden, the inquiry then returns to the plaintiff, to demonstrate that the proffered reason is a pretext for discrimination."   Setelius v. Nat'l Grid Elec. Servs. LLC, No. 11-CV-5528, 2014 WL 4773975, at *6 (E.D.N.Y. Sept. 24, 2014) (quoting United States v. City of New York, 717 F.3d 72, 102 (2d Cir. 2013).   It is not enough for the plaintiff to simply show that defendant's stated reasons were false or not believable, plaintiff must instead show that a discriminatory reason prompted the alleged adverse employment action taken by the defendant.   St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).   "[I]n order to raise an issue of fact that is sufficiently material to defeat a motion for summary judgment, the plaintiff must produce more than simply some evidence; it must be enough evidence to support a rational finding that the defendant's explanation for the adverse action is actually a pretext to disguise discrimination."   Barounis v. N.Y.C. Police Dep't, No. 10 Civ. 2631, 2012 WL 6194190, at *6 (S.D.N.Y. Dec. 12, 2012) (citations omitted); see also Smith v. Am. Exp. Co., 853 F.2d 151, 154-55 (2d Cir. 1988) (In order to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight.")

Here, assuming, without deciding, that Plaintiff could establish a prima facie case of discrimination, her claim fails because Defendant has provided a legitimate, non-discriminatory reason for Plaintiff's termination that she has not rebutted as pretextual.  Defendant offered evidence that Plaintiff's final termination from the Fire Company in 2017 was due to her failure to provide medical documentation throughout her extended medical leave in accordance with the Fire Company's bylaws.  (See Def. Exs. M, N.)  In particular, Plaintiff's 2017 expulsion letter cites as cause for expulsion that she violated Fire Company bylaw Article 2, Section 22 which requires that a full-time member on medical leave provide a signed doctor's note every ninety days.  (Id.)  In view of this evidence, the Court finds that Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's termination.

In response, Plaintiff fails to offer evidence from which a jury could conclude this stated reason for her expulsion is pretextual or otherwise hides Defendant's true motive to discriminate against her on the basis of gender.

Plaintiff's Amended Complaint alleges that she provided "a doctor's note."  (AC at 5.)  The briefs Plaintiff submitted in opposition to summary judgment make various references to medical documentation and doctors notes that were allegedly submitted.  However, the record includes only two doctor's notes.  One doctor's note dated August 8, 2019 states that "[i]n 2017, Tracey King was excused from fire duties until further notice."  (AC at 4, 5, 9.)  This single doctor's note dated two years after her expulsion from the Fire Company fails to identify a genuine dispute of fact that Defendant's proffered reason for Plaintiff's termination "is actually a pretext to disguise discrimination."  Barounis, 2012 WL 6194190, at *6.  The record does not contain any doctor's notes that Plaintiff submitted to Defendants prior to her termination.

The record also includes a handwritten note dated February 21, 2014 signed by <u>Plaintiff</u>, which states that she "was seen by [her] Dr. due to [ ] having heart problem [and] was told to take a leave of absence until further testing."  (AC at 38.)  This evidence fails to support any claim of pretext.  First, the note is dated 2014 and predates the relevant by-law that was the basis for her termination.  Second, this note is not from a doctor, as the bylaws require, but rather, is from Plaintiff herself.

The absence of doctor's notes in the record is particularly notable in light of the text messages Plaintiff sent after her termination in which she stated, "I have all my documents" and "my paper trail."  (AC at 20-21.)  A reasonable jury could not find, based on the record, that Plaintiff submitted a medical note every 90 days from 2015 to 2017 in accordance with the Fire Company's bylaws.  Accordingly, Plaintiff has failed to show that the stated reasons for her termination were false.

Moreover, even assuming, for the sake of argument, that Plaintiff could raise a factual dispute about the doctor's notes, there is insufficient evidence in the record from which a jury could find Plaintiff's termination was motivated by her gender.

First, Plaintiff has not offered evidence of disparate treatment from which a jury could infer discrimination.[8]

---

[8] To the extent Plaintiff intended to raise a discrimination claim based on disparate treatment, that claim fails as a matter of law.  A plaintiff who seeks to establish discrimination based on disparate treatment must show that the employee to whom she compares herself is "similarly situated in all material respects."  <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 54 (2d Cir. 2001).

Here, Plaintiff claims generally that "the [B]oard kept certain members on sick leave for years without medical documentation," (Pl. Opp'n. at 2), but fails to identify those members or their gender.  The only reference to any individual is in a text she sent to Gellineau in November 2017 stating, "Darryl been on sick leave for years, never been a problem."  (AC at 22.)  Such general allegations fail to demonstrate that "[Plaintiff] was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself."  <u>McGuinness</u>, 263 F.3d at 54.  Thus, Plaintiff has not presented sufficient evidence to create a genuine issue of material fact with respect to her discrimination claim based on disparate treatment.

Second, Plaintiff herself claims that Collins was "gunning for [her]" after she complained about him "taking money for a business" and other unspecified "things" he was involved in. (AC at 7; Def. Ex. O.)  Even if a jury were to credit these allegations, this evidence indicates that Plaintiff was terminated for reasons other than her gender.

Third, Harley—who allegedly sexually harassed Plaintiff years earlier—was no longer part of the Fire Company in August 2017 and had no role in her termination.

Finally, the Court notes that one member of the Board, McGrudder, made certain allegedly harassing comments back when Plaintiff started at the Fire Company in 2001.  A reasonable jury could not find, based on those comments, that Plaintiff's termination was based on her gender. See e.g., Monte v. Ernst & Young LLP, 330 F. Supp. 2d 350, 363-64 (S.D.N.Y. 2004) (finding that "a few vague and isolated remarks" were insufficient to establish discriminatory animus), aff'd, 148 Fed. App'x. 43 (2d Cir. 2005); Opoku-Acheampong v. Depository Trust Co., 99-CV-0774, 2005 WL 1902847 at *3 (S.D.N.Y. Aug. 9, 2005) ("[S]tray comments are not evidence of discrimination if they are not temporally linked to an adverse employment action. . . .").

 No reasonable jury could conclude that Plaintiff's expulsion from the Fire Company "occurred under circumstances giving rise to an inference of [gender] discrimination."  Brierly, 359 F. Supp. 2d at 291.  Accordingly, Plaintiff's discrimination claims under Section 1983 and the NYSHRL fail as a matter of law.

### 4.  Hostile Work Environment Claims Under Section 1983 and the NYSHRL[9]

To succeed on a hostile work environment claim, plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or

---

[9] As with discrimination, analyses of hostile work environment claims under Federal and New York law are coextensive.  See Summa, 708 F.3d at 123-24 ("Hostile work environment claims under both [Federal law] and the NYSHRL are governed by the same standard." (citing Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006)).

pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  Plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive.  See Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003).

As discussed supra, hostile work environment claims fall under the "continuing violation" exception to the timeliness requirement.  For a claim to be timely filed, "only one act contributing to the hostile work environment must have occurred within the applicable limitations period." Krachenfels v. N. Shore Long Island Jewish Health Sys., No. 13–CV–243, 2014 WL 3867560, at *10 (E.D.N.Y. July 29, 2014) (citing Raneri v. McCarey, 712 F. Supp. 2d 271, 281 (S.D.N.Y. 2010) ("To defeat the statute of limitations by applying the continuing violation theory, the evidence must show that such a hostile environment was created prior to, and continued into, [the limitations period].")  "A hostile work environment claim does not, however, resuscitate time-barred claims based on discrete acts such as terminations, failures to promote, refusals to transfer and the like." Sundaram v. Brookhaven Nat'l. Laboratories, 424 F. Supp. 2d 545, 568 (E.D.N.Y. 2006).  An employee's dismissal within the statutory period cannot be used "to pull in [a] time-barred discriminatory act" because "continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004) (quoting Morgan, 536 U.S. at 112-13 (hostile work environment claim was untimely because the only discriminatory act within the limitations period was termination of employment)); see e.g., Percy v. New York (Hudson Valley DDSO), 264 F. Supp. 3d 574, 582-84 (S.D.N.Y. 2017) (rejecting argument that termination was the last act in a continuous practice of sexual discrimination that perpetuated a hostile work environment, thereby

invoking the continuing violation doctrine, because discrete acts such as termination cannot revive otherwise untimely acts).

In the instant case, even under a continuing violation theory, Plaintiff's hostile work environment claims are untimely.  The Amended Complaint alleges instances of sexually inappropriate comments and behavior prior to September 9, 2013, but yet Plaintiff filed the instant action nearly six years later on August 12, 2019.  The only timely allegation in the Amended Complaint is Plaintiff's 2017 termination from the Fire Company, however, this discrete act cannot be used to "pull in" her time barred allegations of sexual harassment. See e.g., Patterson, 375 F.3d at 220; see Brown v. New York City Dep't of Educ., 513 F. App'x 89, 91 (2d Cir. 2013) ("The letter notifying Brown of her termination cannot save her hostile work environment claim, because her termination was a separate and discrete act.")  Therefore, as Plaintiff's hostile work environment claims are untimely, Defendant is entitled to judgment as a matter of law.

   5.   Retaliation Claims Under Section 1983 and the NYSHRL

Like her discrimination claims, Plaintiff's retaliation claims under Section 1983 and the NYSHRL are subject to the McDonnell Douglas burden shifting framework.  Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (plaintiff's retaliation claims under the NYSHRL, Section 1981 and Section 1983 "are analyzed pursuant to Title VII principles").  First, the plaintiff must establish a prima facie case of retaliation by showing that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Harper v. Brooklyn Children's Ctr., No. 12-CV-4545, 2014 WL 1154056, at *3 (E.D.N.Y. Mar. 20, 2014) (quotation marks omitted) (emphasis in original).  If the employee establishes a prime facie case, the burden shifts to the employer to provide a non-retaliatory rationale for the adverse action.  Cox

v. Onondaga Cnty. Sheriff's Dept., 760 F.3d 139, 145 (2d Cir. 2014).  "Once the employer has done so, the employee may prevail by demonstrating that the stated rationale is mere pretext."  Id. An employee's "mere conclusory allegations" do not establish that a defendant employer's non-discriminatory reasons were just pre-textual to any retaliatory animus.  Wang v. State Univ. of New York Health Sciences Ctr. at Stony Brook, 470 F. Supp. 2d 178, 186 (E.D.N.Y. 2006) (citing Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("[A] plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment.").

In the instant case, Plaintiff claims that the Board's 2015 amendment to the bylaw under which she was terminated was put in place to retaliate against her for making a sexual harassment complaint against Harley in 2013.  (Pl. Opp'n. at 4.)  Plaintiff claims that "[Harley] proposed the whole bylaw change with a three[-]month sick leave notice" because he "had a problem with [her] being on sick leave and him and his crew put this in place."  (AC at 7.)  Plaintiff also claims that her ultimate termination was also retaliatory.

Plaintiff's claim that the enactment of the by-law in 2015 was retaliatory fails on multiple grounds.

First, the passage of the by-law in June 2015 is clearly outside the limitations period as Plaintiff filed her Complaint on August 12, 2019—more than four years after the passage of Defendant's bylaw.

Second, Defendant's amendment to its bylaw requiring that employees provide medical documentation when on extended medical leave does not constitute an adverse action.  "[A]n employer's request for documentation in connection with medical leave does not constitute [ ] an 'adverse employment action.'"  Blake v. Potter, No. 03–CV–7733, 2007 WL 2815637, at *6 (S.D.N.Y. Sept. 25, 2007), aff'd, 330 F. App'x. 232 (2d Cir. 2009); see also Solomon v.

Southampton Union Free Sch. Dist., No. 08–CV–4822, 2011 WL 3877078, at *8 (E.D.N.Y. Sept. 1, 2011) (requiring plaintiff to submit a doctor's note for sick leave does not materially change the terms of her employment such that it constitutes an adverse employment action), aff'd, 504 F. App'x. 60 (2d Cir. 2012). Therefore, since the evidence is insufficient to support a finding that Plaintiff was subjected to a materially adverse action, Plaintiff fails to establish a prima facie case of retaliation.

Third, given the two-year gap between Plaintiff's harassment complaint in 2013 and the subsequent enactment of the by-law in 2015, Plaintiff cannot establish a causal connection between the by-law and her protected complaints about Harley in 2013.

Plaintiff's retaliation claim based on her termination in August 2017 also fails. Plaintiff was terminated in August 2017 for violating the by-law that was enacted in 2015.

Again, Plaintiff cannot establish a causal connection. As noted by the NYSDHR, there was a two-year gap between Plaintiff's 2013 complaint of Harley's alleged harassment and the passage of the bylaw in June 2015, and then another two-year gap between the passage of the bylaw and Plaintiff's September 2017 expulsion. (See Def. Ex. Q). "[C]ourts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation" based on temporal proximity. Avillan v. Donahoe, No. 13-CV-509, 2015 WL 728169, at *15 (S.D.N.Y. Feb. 19, 2015) (quotation marks omitted); see e.g., New York ex rel. Khurana v. Spherion Corp., 511 F. Supp. 3d 455, 480 (S.D.N.Y. 2021) (citing West v. Timex Corp., 361 F. App'x 249, 251 (2d Cir. 2010) (summary order) (holding that the passage of a year between raising concerns and termination, along with evidence that the termination was for nonretaliatory reasons, could not support a finding of retaliation). The timing of these events does not suggest retaliation.

Moreover, the record indicates that Harley left the Fire Company in December 2016 and therefore could not have been involved in the decision to expel Plaintiff in August 2017.  (Def. Ex. Q.)  Plaintiff has not offered any evidence to the contrary.  Harley's departure prior to the termination undermines Plaintiff's claim that that her termination was in retaliation for her complaints against Harley.

Additionally, Plaintiff has not offered evidence from which a jury could find that Defendants' proffered reason for her termination—namely, her failure to comply with the by-law's requirement that she submit a doctor's note every three months—was a pretext for retaliation.  In addressing Plaintiff's gender discrimination claims, the Court explained why Plaintiff has not established that these reasons were a pretext.  That same analysis applies here.  Plaintiff has not adduced evidence that would permit a reasonable fact-finder to infer that Defendant's stated reason for her removal from employment was pretextual and that retaliation was the real reason for her termination.  Accordingly, Plaintiff's retaliation claim fails.

For these reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's retaliation claim.

6.  <u>Procedural Due Process Claim Under Section 1983</u>

The Court liberally construes Plaintiff's Amended Complaint to allege a Fourteenth Amendment procedural due process claim pursuant to Section 1983.

"Where a plaintiff alleges violations of procedural due process 'the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest <u>without due process of law</u>."  <u>Reed v. Medford Fire Dep't, Inc.</u>, 806 F. Supp. 2d 594, 609 (E.D.N.Y. 2011) (quoting <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990) (emphasis in original)).  The Court applies a two-

step inquiry to determine whether the Plaintiff has a valid Section 1983 due process claim: "(1) whether the Plaintiff possesses a liberty or property interest and, if so, (2) what process [s]he is due before [s]he can be deprived of that interest."  Id. at 609-10 (citing Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002)).

With respect to the first step in the analysis, "it is well-settled that in New York, volunteer firefighters are considered public employees and must be afforded due process in disciplinary proceedings, which includes the right to a hearing held upon due notice and upon stated charges." Id. at 610 (internal quotation marks omitted); Ratajack v. Brewster Fire Department, Inc. of the Brewster-Southeast Joint Fire District, 178 F. Supp. 3d 118 (S.D. N.Y. 2016) (former member of volunteer fire department, who was removed for conduct unbecoming under department's bylaws, had a property interest in his position as a volunteer firefighter).  However, "[i]t is [also] well settled under New York law that a probationary employee has no property rights in his employment and may be terminated for 'almost any reason or no reason at all.'"  Castro v. New York City Bd. of Ed., 777 F. Supp. 1113, 1117  (S.D.N.Y. 1990) (quoting Venes v. Community Sch. Bd., 43 N.Y.2d 520, 525 (1978)).  "A probationary employee who has been dismissed is therefore not entitled to a hearing, unless such an employee can show a violation of statutory law or a constitutionally impermissible purpose underlying the termination."  Id. (finding that because plaintiff did not have a protectable property interest in his probationary teaching position, due process did not require a hearing prior to his dismissal).

Plaintiff bears the burden of proof to establish that she had a property interest in the firefighter position.  To meet this burden, Plaintiff would have to establish that she was a regular volunteer firefighter and was not on probation.  Plaintiff, however, has not offered evidence from which a jury could find that she was a regular non-probationary firefighter.

A letter dated April 9, 2015 explains that Plaintiff was a "a member on probation."  (Def. Ex. K (emphasis added).)  In that letter, Plaintiff—who was on medical leave at the time—was informed that she was being dropped from the rolls for failure to provide the Fire Company with adequate medical records during her extended medical leave.  The letter further explained that because Plaintiff was "serving a probationary term" she did not have a right to petition the Board for a hearing and that her dismissal was final.  (Id. (emphasis added).)  A few weeks later, the Board nevertheless decided to grant Plaintiff an extended medical leave "due to inadequacies of proper record keeping and follow up during her past medical leave." (Def. Ex. L.)  Plaintiff was permitted to continue on medical leave with the stipulation that every 3 months she submit a properly signed and dated note from her physician.  (Id.)  Nothing in the record indicates that this decision altered Plaintiff's "probationary" status.

Plaintiff's only response to this evidence is her claim that there "is no such thing as a member being on probation."  (ECF No. 56 at 2.)  Plaintiff, however, does not point to any legal authority or evidence in support of this conclusory claim.  This conclusory assertion is also contradicted by Plaintiff's own evidence, which indicates that members of the Fire Company can be on "probation" for various reasons.  (See AC at 7 ("his son was a probation member"); AC at 10–13.)  Notably, an excerpt of Defendant's by-laws provided by Plaintiff states that employees who fail to meet call requirements may be placed on probation.  (AC at 10–13.)  Thus, firefighters may, pursuant to the by-laws, be on probation.  However, Plaintiff—who bears the burden of proof to establish a property interest—has not even introduced a complete copy of the by-laws.

Plaintiff's naked assertion that there "is no such thing as a member being on probation" is, given all the points above, simply insufficient for a jury to find that Plaintiff was a non-probationary employee who had a property interest in her position.

Because Plaintiff has not established that she had a property interest, any claim that she had procedural due process right to a hearing prior to her termination fails.

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the Defendant's motion for summary judgment and DISMISSES all of Plaintiff's claims with prejudice.

Given Plaintiff's pro se status, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal.  Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to send a copy of this Order to the pro se Plaintiff and mark this case closed.

**SO ORDERED.**

Dated:  July 27, 2023                                    _____/s/ (JMA)_____
Central Islip, New York                              Joan M. Azrack
                                                                  United States District Judge

28